UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD F. BYRD,<br><br>    Plaintiff,<br><br>    v.<br><br>BRADLEY J. LITTLE and DAVE JEPPESEN,<br><br>    Defendants. | Case No. 1:21-cv-00001-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Richard F. Byrd's "Motion to Expedite Life and Death Matter" (Dkt. 2), as well as various motions to amend/supplement (Dkts. 7, 8, 11). As explained below, the Court will treat Byrd's Motion to Expedite as a Motion for Temporary Restraining Order. Defendants Brad Little and Dave Jeppesen[1] oppose the Motion. Dkt. 14.

Having reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides the pending motions on the

---

[1] In his pleadings, Byrd spells the Idaho Department of Health and Welfare Director's name Jeppensen. The correct spelling, however, is Jeppesen. The Court will use the correct spelling in the case caption and throughout the decision.

record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court GRANTS the Motions to amend/supplement and DENIES the Motion to Expedite.

## II. BACKGROUND

On January 4, 2021, Byrd filed the instant suit. Dkt. 1. As is standard practice, the case was randomly assigned, and United States Magistrate Judge Candy W. Dale received the assigned case.

In his Complaint, Byrd outlines two "claims" related to Idaho's COVID-19 vaccination efforts. Byrd first claims that Idaho Governor Brad Little and Idaho Department of Health and Welfare Director Dave Jeppesen ("Defendants") "did with reckless disregard of the rights of the high risk groups, 65 and over, and to the very high risk group 80 and over, like [him]self, allocate the bulk of available COVID-19 vaccine to that low risk group [of community health care workers]." *Id*. at 5. Byrd next claims that Defendants allocated vaccines to nursing home residents over the age of 65, but not to members of the community over the age of 65, and that this is a "clear violation of the equal protection of the law set out in the U.S. Constitution." *Id*. at 6.

A few days later, on January 8, 2021, Byrd filed his "Motion to Expedite Life and Death Matter." Dkt. 2. In this Motion, Byrd asks for an "ex parte injunction" and expounds upon the two claims outlined in his Complaint. *See generally id.* In short, Byrd alleges that Defendants are not justified in prioritizing the medical industry and those in nursing homes as part of its vaccination allocation over elderly people like him. His "desire . . . is to petition the Courts for an order or injunction commanding the State of Idaho to vaccinate

the 'most vulnerable' first, the over 65 group, ahead of the 'proven' low risk groups, such as the medical industry and public administrators." *Id*. at 7.

On January 12, 2021, Judge Dale issued a procedural order. Dkt. 4. In her order, Judge Dale explained that the Court would construe Byrd's Motion as a motion for preliminary injunction. *Id.* Judge Dale also noted that Byrd needed to follow Federal Rule of Civil Procedure 4 as it relates to the issuance of summonses and service of the complaint. *Id*. She also outlined that until all parties appeared and consented to the jurisdiction of a magistrate judge, she could not consider Byrd's claims. *Id.* at 2. Since then, this case has seen almost daily filings.

The day following Judge Dale's order, on January 13, 2021, Byrd consented to Judge Dale's jurisdiction. Dkt. 5.[2]

On January 14, 2021, the Clerk of the Court issued the summonses. Dkt. 6.

On January 15, 2021, Byrd filed a Motion to Amend. Dkt. 7. In this Motion, Byrd explained that while his Complaint likely suffered from "technical barriers," he hoped the Court recognized that "time is of the essence" and his ex parte injunction should be granted to protect his constitutional rights. *Id*. Byrd attached various statistics, articles, and reports to this Motion. Dkts. 7-1–7-9.

---

[2] The Clerk of the Court's standard procedure is to file consents *without* indicating to the assigned judge which party consented. This is done to protect the integrity of the process and to ensure no party feels undue pressure to provide consent. Thus, the Court would normally not be able to tell that it was Byrd who filed consent. As will be explained more fully, however, Byrd later filed a motion to withdraw consent. *See* Dkt. 9. Thus, the Court knows that Byrd was the filer of the consent document at Dkt. 5.

**MEMORANDUM DECISION AND ORDER - 3**

On January 16, 2021, Byrd filed a Motion to Admit Document Inadvertently Omitted from his Motion to Amend (Dkt. 7). Dkt. 8. The omitted document was another statistical report.

On January 17, 2021, Byrd filed a Motion to Withdraw Consent. Dkt. 9. In this Motion, Byrd withdrew his prior consent because "the Magistrate Division seems to be unable to grasp the terms 'Life or Death' or 'Urgency' as stated in the Complaint, and has made no movement in proceeding with an 'ex parte' motion for temporary injunction . . . ." *Id*. at 1. On January 19, 2021, Judge Dale granted Byrd's Motion to Withdraw Consent. Dkt. 10. Thereafter, the case was reassigned to the undersigned District Judge.

On January 20, 2021, Byrd filed a Motion to Submit Additional Documents in Support of Complaint. Dkt 11. These additional documents were more reports related to COVID-19 morbidity and age.

Also, on January 20, 2021, Defendants filed a Notice that they accepted service of the Complaint. Dkt. 12.

On January 22, 2021, Defendants filed an opposition to Byrd's Motion to Expedite. Dkt. 14. Byrd replied on January 26, 2021. Dkt. 15.

On the morning of February 2, 2021, Defendants filed a Notice of Additional Information indicating that, as of February 1, 2021, all Idahoans ages 65 and older could request a vaccination. Dkt. 18. Byrd responded a few hours later contending that he and his wife had called multiple clinics trying to get scheduled for the vaccine to no avail. Dkt. 19. Byrd noted that "there is a big difference between being able to 'request' a vaccination and actually getting one" and that his prior Motions were still necessary. *Id*. at 2.

MEMORANDUM DECISION AND ORDER - 4

On February 5, 2021, Byrd filed a Petition for Writ of Mandamus with the Ninth Circuit Court of Appeals. Dkt. 21. In his Petition, Byrd alleges that the United States District Court for the District of Idaho—both its magistrate judges and district judges—has failed to appreciate the seriousness of his case and has not taken any action on these "life and death" matters. Dkt. 21-2, at 1–2. The Ninth Circuit has yet to act on Byrd's Petition.

### III. LEGAL STANDARD

A plaintiff seeking a preliminary injunction or a temporary restraining order ("TRO") "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *E.g.*, *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction and a TRO generally serve the same purpose of "preserv[ing] the status quo ante litem pending a determination of the action on the merits." *L.A. Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1200 (9th Cir. 1980); *see also* Fed. R. Civ. P. 65.

Nevertheless, certain circumstances warrant divergence from the status quo. Preliminary relief may take one of two forms: (1) prohibitory which prohibits "a party from taking action and preserves the status quo pending a determination of the action on the merits" and (2) mandatory which "orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma BmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (cleaned up). "A mandatory injunction goes well beyond simply maintaining the status quo

pendente lite and is particularly disfavored." *Id.* (cleaned up). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* (cleaned up).

It is well-established that whether a preliminary injunction or a TRO should be issued is committed to the sound discretion of the district court. *Jimenez v. Barber*, 252 F.2d 550, 554 (9th Cir. 1958).

## IV. DISCUSSION

At the outset, the Court must address three points.

First, it goes without saying that the COVID-19 pandemic has wreaked havoc on people the world over. Much of the response to this black swan event—globally, nationally, and locally—has tested the bounds of various cultural, social, medical, and legal principles. The Court is cognizant of these facts and sympathizes with Byrd's concerns. That said, the Court's mandate is to analyze and uphold the law. It reviews Byrd's motion today solely within the parameters of the applicable law.

Second, as noted, beginning on February 1, 2021, anyone ages 65 or older have been able to request a vaccine in Idaho. Byrd falls into this category. The Court does not know if Byrd has since been able to receive a COVID-19 vaccination or not, but even if he has not, the fact that they are now available to him may implicate other legal doctrines such as

standing and mootness. Regardless of whether these principles apply, the Court will analyze Byrd's Motion to Expedite on its merits.

Third, and relatedly, the Court will interpret Byrd's Motion to Expedite Life and Death Matter as a motion for a mandatory TRO. As noted, a TRO is intended to preserve the status quo pending a determination of the case on the merits. However, when a party seeks any order requiring another party to affirmatively take some action, the requested order is considered a mandatory TRO. In his Motion, Byrd requests "an order or injunction commanding the State of Idaho to vaccinate the 'most vulnerable' first, the over 65 group, ahead of the 'proven' low risk groups, such as the medical industry and public administrators." Dkt. 2, at 7. This is a request for a mandatory order, not a prohibitory request for preserving the status quo. In addition, Byrd seeks this relief "at the very earliest possible time." *Id*. at 1. Because Byrd seeks immediate, preliminary relief, in the form of a mandatory order against Defendants, his Motion is consistent with a mandatory TRO, and the Court will interpret and analyze it as such.

Finally, the Court grants each of Byrd's motions to amend or supplement (Dkts. 7, 8, and 11) and will give those materials the weight it deems appropriate.

The Court next turns to the relevant TRO factors.

### A. Success on the Merits

The first factor of a TRO involves a showing of a likelihood of success on the merits. As explained, the granting or denying a motion for a TRO is not an adjudication on the merits; rather, it is a preliminary form of relief until the court can reach the merits. *Int'l Ass'n of Machinists & Aerospace Workers v. Nat'l Ry. Labor Conference*, 310 F. Supp.

**MEMORANDUM DECISION AND ORDER - 7**

904, 905 (D.D.C. 1970). In this case, Byrd cannot show a likelihood of success on the merits of either of his claims.

   1. *Defendants' Vaccination Prioritization Policy Claim*

In his first claim, Byrd asserts that Defendants have erroneously or improperly prioritized certain groups of people over others when it comes to Idaho's vaccination allocation schedule.

Defendants begin by explaining that in October 2020, the state's COVID-19 Task Force (which was originally formed in June 2020) transitioned into the state's COVID-19 Vaccine Advisory Committee (CVAC). That committee, comprised of numerous stakeholders, reviewed recommendations from the World Health Organization, Johns Hopkins University, the National Academy of Medicine, and the National Advisory Committee on Immunizations Practices in formulating its own recommendations for Idaho's vaccination plan. Defendants assert that the strategy they ultimately have implemented in Idaho is based largely on CVAC's recommendations and is a sound plan. What's more, Defendants argue that, although Byrd may prefer another plan, the decisions with which he now disagrees are the province of State officials and are not subject to judicial review. The Court agrees with Defendants, at least at this juncture.

It has long been understood that states have "great latitude under their police power to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756, (1985) (quoting *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 62 (1873). As Chief Justice Roberts of the United States

Supreme Court recently noted, this principle remains intact even during (or especially during) difficult times:

> Our Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States to guard and protect. When those officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad. Where those broad limits are not exceeded, they should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people.

*S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) (cleaned up). The Court agrees with Chief Justice Robert's conclusion in this case.

The Court's role in relation to Defendants' health and safety policies and procedures is to ensure they comply with any and all applicable laws and regulations. Here, Byrd does not complain that Defendants' have broken any law; he simply disagrees with how they choose to structure their plan. Byrd's mere disagreement does not satisfy his burden. Nor does it allow the Court to review, or overturn, actions that are integral to the State's privilege and obligation of protecting health and safety. The Court is not discounting Byrd's "plan." He has put forth valid arguments for why his plan would be better. Nevertheless, at the end of the day, these reasons are immaterial to the Court's decision. Byrd has not presented the Court with any rationale—nor does the Court see any—that would allow it to override Defendants' judgment. The Court must afford latitude to Defendants as they exercise their reasoned judgment on these difficult issues, particularly absent persuasive legal authority to the contrary.

In short, because the Constitution entrusts State officials with matters of public health and safety, and Byrd has not presented the Court with compelling legal reasons to do so, Byrd is unlikely to succeed on his first claim which seeks to overturn the Defendants' policy choices.

### 2. Equal Protection Claim

In his second claim, Byrd asserts that Defendants are violating the Equal Protection Clause of the Fourteenth Amendment[3] of the United States Constitution because individuals 65 years and older in long-term care facilities may receive the COVID-19 vaccine now, but he—an individual who is also older than 65 but does not live in a long-term care facility—may not.

The Equal Protection Clause requires that similarly situated individuals be treated alike, subject to the appropriate level of constitutional scrutiny. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985). For two groups to be "similarly situated" and implicate the Equal Protection Clause, they must be similarly situated "in respects that are relevant to the state's challenged policy." *Harrison v. Kernan*, 971 F.3d 1069, 1075 (9th Cir. 2020) (cleaned up). If the two groups are similarly situated, the Court must determine the appropriate level of scrutiny and then apply it. *Gallinger*, 898 F.3d at 1016. But if the plaintiff cannot show that he or she is similarly situated to an asserted

---

[3] Byrd never technically states whether he is bringing his Equal Protection claim under the Fifth or Fourteenth Amendment; however, the Fourteenth Amended seems the most likely.

favored group, the inquiry ends, and the claim fails. *Roy v. Barr*, 960 F.3d 1175, 1183 (9th Cir. 2020).

In his Motion, Byrd asserts that he "cannot determine a difference, legally or morally, within an age group, between a person 'struggling along' at home, or a person living in a LTCF [long-term care facility], or a motel or other accommodation, as a group they are entitled to the same consideration and benefits." Dkt. 2, at 7. Accordingly, Byrd argues that he is similarly situated to individuals who reside in long-term care facilities. While Byrd may be in the same age demographic as many who reside in long-term care facilities, that is the extent of their commonality.

Differences between Byrd and those individuals abound. For example, individuals in long-term care facilities typically live in a group, or congregate, living situation. Most members of the community (including Byrd) do not. Additionally, most of the people who reside in long-term care facilities require various types of assistance which means they have contact with a more significant number of people who come from outside the facility. Byrd has not argued or presented any evidence to suggest he is similarly situated in this respect.

Simply being similar in age does not mean that Byrd is similarly situated to residents of long-term care facilities and deserves equal treatment. The Court holds that Byrd and the residents of long-term facilities are not similarly situated. Therefore, Byrd's claim necessarily fails. That said, even were Byrd similarly situated, he still must overcome the appropriate level of scrutiny the Court applies to Defendants' actions. The Court turns next to this critical question.

When a classification involves neither fundamental rights nor "proceed[s] along suspect lines," it is constitutional under the Equal Protection clause if there is a rational relationship between the difference in treatment and a legitimate governmental purpose. *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 680 (2012) (quoting *Heller v. Doe*, 509 U.S. 312, 319–20 (1993)). This is a particularly deferential standard. Under rational-basis review, a court may not "judge the wisdom, fairness, or logic" of the government's policy choices, nor may it "sit as a superlegislature to judge the wisdom or desirability of" policy determinations. *Heller*, 509 U.S. at 319. Instead, the rational basis test "accords a strong presumption of validity" to a challenged government policy. *McLean v. Crabtree*, 173 F.3d 1176, 1186 (9th Cir. 1999).

At the current time, the State of Idaho only receives a certain number of doses of the various COVID-19 vaccines. This number is insufficient to inoculate the entire states' population at once. Accordingly, Defendants had to determine the best way to distribute their limited supply. The State logically chose to order, or rank, certain groups of people over others based upon a variety of factors. It based its choices on the scientific studies referenced above. Such an approach was rational. Prioritizing a particularly vulnerable group like residents of long-term care facilities over others (even those similar in age) is rationally related to the legitimate government interest of maximizing the health and safety of Idahoans in the midst of the COVID-19 pandemic and meets constitutional muster under the rational basis test.

Again, Byrd's disagreement with Defendants' approach to the situation, with nothing more, means his Equal Protection claim is unlikely to succeed on the merits.

**MEMORANDUM DECISION AND ORDER - 12**

## B. Irreparable Harm

The Court must next determine whether Byrd can "demonstrate immediate threatened injury" absent the Court's intervention. *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). The mere possibility of harm is insufficient. Instead, Byrd must establish that irreparable harm is likely, not just possible, in the absence of an injunction. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). Irreparable harm has been described as "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." 11A Wright & Miller, Fed. Prac. & Proc. § 2948. Under the circumstances, the Court finds Byrd cannot meet his burden of showing a likelihood of irreparable harm.

All individuals ages 65 and older are now eligible to receive the vaccine. To be sure, Byrd's point is well taken that eligibility does not necessarily equate to availability; however, such does not change the Court's analysis today. The fact remains that the remedy for Byrd's cause of action *is* in fact available to him. And, even if the Court were to grant a mandatory TRO at this time, doing so would not guarantee that Byrd would be immediately vaccinated. The State has established a structure for prioritizing eligibility for

vaccination, but it does not control the supply of vaccine into the State or the number of people who apply for the vaccine at any given time.

Thus, he cannot show irreparable harm is possible, let alone likely, in the absence of Court intervention or because of Defendants' actions. In sum, Byrd has failed to meet this prong of the Court's inquiry as well.

## V. CONCLUSION

Where, as here, the Court finds that the Plaintiff cannot meet the first two factors of the TRO analysis, it need not continue its inquiry. *See All. for the Wild Rockies v. United States Forest Serv.*, No. 1:15-CV-00193-EJL, 2016 WL 3349221, at *3 (D. Idaho June 14, 2016) ("Where a plaintiff fails to demonstrate a likelihood of irreparable harm in the absence of preliminary relief, the court need not address the remaining elements of the preliminary injunction standard.").

In mandatory TRO cases, the burden is "double demanding." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Byrd "must establish that that law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed." *Id*. Here, he has failed to do so. Byrd has not established a likelihood of success on either of his claims, nor has he shown irreparable harm will occur absent action from the Court.

Again, the Court understands and appreciates Byrd's concerns. That said, he has failed to carry his burden of establishing that the Court should take the extraordinary step

of issuing a mandatory TRO to overrule and change Defendants' course of action in the State. Byrd's Motion must, therefore, be DENIED.

## VI. ORDER

**IT IS HEREBY ORDERED THAT:**

1. Byrd's Motion for a Temporary Restraining Order (Dkt. 2) is DENIED.

2. Byrd's Motions to Amend/Supplement (Dkts. 7, 8, 11) are GRANTED.

DATED: February 26, 2021

David C. Nye
Chief U.S. District Court Judge