UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD F. BYRD,<br><br>              Plaintiff,<br>vs.<br><br>BRADLEY J. LITTLE and DAVE JEPPESEN.,<br><br>              Defendants. | Case No. 1:21-cv-00001-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendants' Motion to Dismiss. Dkt. 28. While originally opposing the Motion to Dismiss (Dkt. 33), Plaintiff Richard Byrd recently filed his own Motion to Dismiss pursuant to Federal Rule of Procedure 41(a)(2). Dkt. 39.

Because Byrd has filed this Motion, the Court *could* simply dismiss the case without further analysis. It will dismiss the case to be sure, but does so against the backdrop of the Defendants' Motion to Dismiss for two reasons.

First, Byrd filed his Motion to Dismiss asking the Court to dismiss his claims without prejudice. The Court will not do so because, as explained below, Byrd's claims are improper and cannot be saved by amendment.

Second and relatedly, Rule 41 explains that the Court *may*—upon a plaintiff's request—dismiss any action "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Because the Court is dismissing Byrd's claims with prejudice, it takes this opportunity to explain why such a finding is proper.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Based on the following, the Court finds good cause to GRANT Defendants' Motions to Dismiss and to GRANT Byrd's Motion to Dismiss.

## II. BACKGROUND

On January 4, 2021, Byrd filed a complaint with the Court challenging Idaho's COVID-19 vaccination schedule.[1] Dkt. 1. Byrd's first claim states that Governor Little and Idaho Department of Health and Welfare Director Dave Jeppesen ("Defendants") abused discretionary powers by enforcing the vaccination schedule, which prioritized vaccinating healthcare personnel in the first phase. *Id.* Byrd suggests this vaccination plan does not rely on "science or statistical facts," because healthcare workers are at a much lower risk of severe illness or death from COVID-19 than people 65 years old and older. Dkt. 1, at 5. Thus, in Byrd's estimation, the vaccination schedule should focus on vaccinating high-risk individuals *before* vaccinating healthcare personnel.

Byrd's second claim argues that Idaho's vaccination plan violated the Equal Protection Clause of the Constitution by prioritizing elderly residents of long-term care

---

[1] Using federal guidance and input from the newly created COVID-19 Vaccination Advisory Committee, Idaho Governor Brad Little initiated a vaccination schedule, which prioritized healthcare personnel and long-term care facility residents. *Idaho COVID-19 Vaccine Advisory 1 Committee (CVAC) Vaccine Prioritization*, IDAHO DEPT OF HEALTH AND WELFARE (Dec. 9, 2020), https://coronavirus.idaho.gov/wp-content/uploads/2020/12/CVAC-Prioritization-for-HCP-and-Essential-Workers.pdf. In essence, Byrd challenges this decision.

facilities over Idahoans of the same age, but not housed in such facilities. *Id.* at 6. In this claim, Byrd alleges there is no difference between those 65 and older living in a long-term care facility and those 65 and older "struggling along at home." *Id*. Byrd suggests that by only prioritizing elderly people living in long-term care facilities, but denying him and other individual over 65 and living at home, Defendants are violating the Equal Protection clause.

In January 8, 2021, Byrd filed a Motion to Expedite Life and Death Matter requesting an "ex parte injunction," which asked the Court to order the State of Idaho to vaccinate the "most vulnerable" first, i.e. Idahoans over age 65. Dkt. 2. On January 22, 2021, Defendants filed an opposition to Byrd's Motion to Expedite. Dkt. 14. Byrd replied on January 26, 2021. Dkt. 15.

On February 2, 2021, Defendants filed a Notice of Additional Information stating that, as of February 1, 2021, all Idahoans ages 65 and older could request a vaccination. Dkt. 18. Byrd responded that he and his wife had called multiple clinics but were unable to schedule an appointment for a vaccination. Dkt. 19. Byrd further stated that his prior Motions were still necessary, because "there is a big difference between being able to 'request' a vaccination and actually getting one." *Id.* at 2.

On February 5, 2021, Byrd filed a Petition for Writ of Mandamus with the Ninth Circuit Court of Appeals, arguing that the United States District Court for the District of Idaho had not taken any action is this "life or death matter," and failed to appreciate the seriousness of his case. Dkt. 21. On March 9, 2021, the Ninth Circuit Court of Appeals denied Byrd's request, stating that he failed to demonstrate that his case warranted

intervention by that court. Dkt. 31.

On February 26, 2021, the Court denied Byrd's Motion for to Expedite Life and Death Matter, which the Court construed as a Motion for Temporary Restraining Order. Dkt. 27. The Court explained that the Temporary Restraining Order was not appropriate because Byrd's claim was unlikely to succeed on the merits and failed to demonstrate immediate threatened injury. *Id.*

On March 1, 2021, Defendants filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Byrd's first claim has not sufficiently raised a federal question, that he does not have standing, and that he has failed to state a claim upon which relief may be granted. Dkt. 28. Defendant's argue further that Byrd's second claim, the Equal Protection Violation, is moot because as of February 1, 2021, Byrd has been treated the same as residents in long-term care facilities—eligible for the vaccination. Byrd was subsequently served on March 9, 2021. Dkt. 30. Byrd responded on March 17, 2021, and Defendants replied on March 31, 2021. Dkts. 33, 35.

On March 31, 2021, the Defendants file a Motion for Limited Jurisdictional Discovery, requesting that Byrd disclose whether he had received a COVID-19 vaccination (to assess the mootness of Byrd's claims). Dkt. 35. On April 19, 2021, Byrd responded to Defendants Motion, stating that he had "completed" his vaccination on March 12, 2021. Dkt. 37.

On May 3, 2021, Defendants filed a reply to their motion for jurisdictional discovery. Dkt. 38. In that brief submission, Defendants point out that because Byrd confirmed he has been fully vaccinated, he 1) does not have standing to bring this suit, and

2) his claims are moot. *Id.*

Also on May 3, however, Byrd filed a Motion to Dismiss. Dkt. 39. In this Motion, Byrd reviews the posture of the case and laments that "at this time [] any further litigation would . . . have no beneficial effect on the substance of the Complaint." Dkt. 39, at 4. Accordingly, Byrd asks that the case be dismissed without prejudice. Defendants do not oppose the Motion. Dkt. 40.

As previously noted, while the Court "may" dismiss this case solely upon Byrd's Motion, it has elected to analyze the Defendants' Motion to Dismiss in order to outline the "terms" of the dismissal and to explain why it is dismissing the case with prejudice. *See* Fed. R. Civ. P. 41(a)(2) (outlining that "unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice").

### III. LEGAL STANDARD

#### A. Rule 12(b)(1)

When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual."). If the jurisdictional attack is facial, the challenger asserts that the allegations contained in a complaint are insufficient on their face to establish federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When

considering this type of jurisdictional attack, a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988).

By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Meyer*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations, and may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id*.

**B. Rule 12(b)(6)**

Rule 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121. A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id*. at 570. In considering a Rule 12(b)(6) motion, the Court must view the complaint in the

light most favorable to the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

Finally, in determining whether a Rule 12(b)(6) dismissal should be granted, the Court may not look at matters outside the complaint. *Schneider v. Calf. Dep't of Corrections*, 151 F.3d 1194, 1197 (9th Cir. 1998). However, the Court can take judicial notice of any document not attached to the complaint if the complaint specifically refers to it and its authenticity is not questioned. Fed. R. Evid. 201(f); *Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir. 1982).

## IV. DISCUSSION

First, the Court acknowledges that the COVID-19 pandemic has had severe consequences for people all over the world, forcing the government to respond to this novel public health emergency in drastic ways. Additionally, the Court understands the gravity of the pandemic and sympathizes with Byrd's concerns. That said, as previously stated in the Courts TRO Order, the Court's mandate is to analyze and uphold the law. It reviews the Defendant's motion today solely within the parameters of the applicable law. The Court will analyze each challenge in turn.

### A. Jurisdiction Under Rule 12(b)(1)

In this case there are three reasons the Court lacks jurisdiction over Byrd's claims and must dismiss the suit. First, the Court lacks subject matter jurisdiction because Byrd has not identified an applicable federal law upon which his claims rest. Second, Byrd does not have standing. Third, Byrd's claims are moot. Each reason divests the Court of jurisdiction.

*1. Subject Matter Jurisdiction*

Any action which lack subject matter jurisdiction may be dismissed under Rule 12(b)(1). *California v. U.S. Dep't of Homeland Sec.*, 476 F. Supp. 3d 994, 1002 (N.D. Cal. 2020). In assessing whether Byrd's complaint is within the Court's jurisdiction, the Court considers the "well-pleaded complaint rule."

The "'well-pleaded complaint rule' . . . provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). It is the complaint only, not the answer to the complaint, that courts must look to in order to determine if the case arises under federal law. *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 830 (2002) ("[W]hether a case arises under federal patent law cannot depend upon the answer. Moreover, we have declined to adopt proposals that the answer as well as the complaint . . . be consulted before a determination [is] made whether the case 'arises under' federal law." (internal quotations and citations omitted)).

Here, the cover page of Byrd's complaint references 42 U.S.C. § 12133 as the basis for federal jurisdiction. 42 U.S.C. § 12133, a component of the Americans with Disabilities Act ("ADA"), provides remedies, rights, and procedures for claimants alleging discrimination on the basis of disability. This provision provides enforcement of § 12132, which prohibits discrimination against any "qualified individual with a disability." 42 U.S.C. § 12132. Here, Byrd never argues that he is a qualified individual with a disability or that the vaccination plan discriminates on the basis of disability. It is difficult for the Court to assess whether Byrd intended to predicate his claim on the ADA, but it seems it

was a mistake. In Byrd's Motion to Expedite Life and Death Matter, Byrd writes that Claim two of his complaint supports Claim one, "but brings forth the Constitutional issue, equality under the law." Thus, it seems Byrd was attempting to rely on the Equal Protection Clause for the entirety of his complaint.[2]

Unfortunately for Byrd, "no cause of action exists directly under the United States Constitution." *Mohsin v. California Dep't of Water Res.*, 52 F. Supp. 3d 1006, 1011 (E.D. Cal. 2014) (*citing Azul–Pacifico, Inc. v. City of Los Angeles* 973 F.2d 704, 705 (9th Cir.1992). A claimant can bring a cause of action under the Constitution only when no other remedy at federal law exists. *Id.* However, Congress provided a remedy for constitutional violations by state actors when it enacted 42 U.S.C. § 1983. Thus, while Byrd had a remedy under § 1983, he failed to assert the federal law in his complaint. Although there is reference to the Equal Protection Doctrine, Byrd never referenced § 1983 on the face of his complaint, which fails to meet the "well-pleaded complaint rule." Byrd was required to provide a proper federal statute to invoke the Court's federal question subject matter jurisdiction. Because Byrd failed to do such, dismissal is appropriate.

*2. Standing*

Byrd's complaint must also meet Article III's standing requirements to establish subject matter jurisdiction under Rule 12(b)(1). A complaint must be dismissed for lack of subject matter jurisdiction if the plaintiff does not meet Article III standing requirements.

---

[2] The Court's assumption is supported by Byrd's explanation in prior filings (when Defendants pointed out the odd use of § 12132) that when he filed this case, he could not find a "code that fit what I was doing," and so "for lack of a more appropriate Code that is what I used." Dkt. 15, at 4. Byrd goes on to say that his case is really about the 14th Amendment, due process, and equal protection. *Id.*

*Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Federal Courts may only interpret actual "Cases" or "Controversies" under U.S. Const. art. III, § 2. *U.S. Dep't of Homeland Sec.*, 476 F. Supp. 3d at 1004. The Supreme Court has provided three elements that a plaintiff must prove to establish standing: (1) "The plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and (3) "it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up).

First, Byrd has not established that he has suffered an injury in fact. Injury in fact "requires more than an injury to a cognizable interest,"; the plaintiff himself must be among the injured. *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972). In his complaint, Byrd argues that the vaccination plan exposes him, and others over 65, "to an unnecessary risk of death for an additional 120 days or more." Dkt. 1, at 5. The heart of Byrd's complaint projects that people over the age of 65 are at a higher risk of death or serious illness from COVID-19 than younger people, which is true. However, these facts alone do not amount to a concrete and particularized injury, because Byrd himself has not suffered an injury. Byrd attempts to allege a future injury from the failure to obtain a COVID-19 vaccination, but he has not sufficiently stated that the vaccination plan has put him in imminent danger of death or serious injury. In fact, as the Defendants correctly state, Byrd alleges a death

rate of 953 people per million, meaning 99.9% of the population will not suffer any injury—specifically death—as a result of COVID-19. While any death is significant, the .1% risk of dying from COVID-19 because Byrd was not prioritized in the vaccination plan provides the type of conjectural or hypothetical injury that fails to meet the Article III standing requirements.

Next, Byrd's complaint fails to meet the redressability requirement. Byrd suggests the Defendant's vaccination plan is the cause of the injury, namely the increased risk of death from COVID-19. Thus, Byrd presupposes that if the Court grants the relief he requests (that people over the age of 65 be prioritized to receive the vaccination), the injury would be redressed. However, Byrd has made no showing that by requiring the Defendants to prioritize people over 65 in the vaccination schedule, Byrd and others his age would be guaranteed a vaccination. Overall, Byrd's complaint projects a far too hypothetical injury, and it is only "merely speculative" that this injury would be redressed by a favorable decision by the Court.

In sum, because Byrd has not sufficiently alleged a concrete and particularized injury in fact, and because a favorable decision by the Court would not necessarily cure his alleged injury, Byrd has failed to establish standing.

*3. Mootness*

A court lacks jurisdiction to adjudicate a case, if it becomes moot. In such a circumstance, there is no longer a "Case" or "Controversy" under Article III. *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007); *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013). An action becomes moot when the issue is no longer a live issue or

the party no longer has a legally cognizable interest in the outcome. *Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir. 1985). Thus, "[t]he basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988).

As of February 1, 2021, Byrd has been treated the same as residents in long-term care facilities because the vaccine became available to him. Additionally, Byrd was fully vaccinated on March 12, 2020. Thus, the controversy in this case—offering the COVID-19 vaccination to those 65 and older—is no longer a controversy because Byrd was not only offered the vaccination, but has received the vaccination. It is impossible for the Court to grant effective relief to Byrd, because there is no longer a present controversy to provide relief for. Because the vaccination is open to those over 65, there is no present "Case" or "Controversy," and the case is moot.

B. **Failure to State a Claim Under Rule 12(b)(6)**

In addition to the jurisdictional bars warranting dismissal, Byrd's claims must be dismissed because each fails to state a claim upon which relief can be granted. The Court will briefly address these arguments as well.

1. *Byrd's Vaccination Prioritization Policy Claim*

Byrd's first claim alleges that Defendants enforced a vaccination plan which improperly prioritized certain groups above individuals over 65, which are in the greatest need of the COVID-19 vaccination.

It is well established that the States have "great latitude under their police power to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons."

*Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756, (1985) (*quoting Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 62 (1873). The State is entrusted to guard and protect public health and safety, and when the State "acts in areas fraught with medical and scientific uncertainties their latitude must be especially broad." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) (cleaned up). Thus, "the court would usurp the function of another branch of government if it adjudged, as a matter of law, that the mode adopted under the sanction of the state, to protect the people at large was arbitrary, and not justified by the necessities of the case." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27, 25 (1905).

As Defendants explain, the state's COVID-19 Vaccine Advisory Committee (CVAC) reviewed recommendations from the World Health Organization, Johns Hopkins University, the National Academy of Medicine, and the National Advisory Committee on Immunizations Practices before creating it's own vaccination plan, which was subject to change as the organization discovered new information. In fact, this was exactly what happened in Idaho. As CVAC received new guidance from the National Advisory Committee on Immunization Practices, it made changes to the vaccination schedule, which reprioritized Idahoans over age 65. Byrd argues the State failed to use the science on COVID-19 appropriately and should have prioritize individuals over 65 much earlier. However, the Court is only tasked with ensuring the State has complied with applicable laws and regulations; not any particular outcome. While the Court does not dismiss Byrd's preferred vaccination plan, it is not in the Court's discretion to override the State's public health plan which has provided citizens with the COVID-19 vaccination. Because Byrd

has not sufficiently presented a reason for the Court to intervene with the State's well-established authority to legislate matters of public health and safety, Byrd's first claim has failed to state a claim upon which the Court can grant relief. Thus, dismissal is appropriate under Rule 12(b)(6).

2. *Byrd's Equal Protection Claim*

Byrd's second claim suggests that Defendants violated the Equal Protection Clause for prioritizing residents in long-term care facilities over individuals that are 65 and older. Byrd argues that he "cannot determine a difference, legally or morally, within an age group, between a person 'struggling along' at home, or a person living in a LTCF [long-term care facility], or a motel or other accommodation, as a group they are entitled to the same consideration and benefits." Dkt. 2, at 7

The Equal Protection Clause requires that similarly situated individuals be treated alike, subject to the appropriate level of constitutional scrutiny. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439–40 (1985). For two groups to be "similarly situated" and implicate the Equal Protection Clause, they must be similarly situated "in respects that are relevant to the state's challenged policy." *Harrison v. Kernan*, 971 F.3d 1069, 1075 (9th Cir. 2020) (cleaned up). If the two groups are similarly situated, the Court must determine the appropriate level of scrutiny and then apply it. *Gallinger*, 898 F.3d at 1016. But if the plaintiff cannot show that he or she is similarly situated to an asserted favored group, the inquiry ends, and the claim fails. *Roy v. Barr*, 960 F.3d 1175, 1183 (9th Cir. 2020).

While Byrd attempts to argue that there are no differences between him and those

living in long-term care facilities, that simply is not the case. Residents of long-term care facilities live in aggregate communities, whereas the individuals are subject to contact with a more significant number of people than individuals living in separate spaces, like Byrd. Additionally, Byrd has failed to provide any evidence explaining how Byrd and residents of long-term care facilities are similarly situated. As the Court previously stated in its Decision on Byrd's Motion for TRO, simply being the same age does not mean Byrd is similarly situation to residents in long-term care facilities. Therefore, Byrd's second claim has failed to state a claim upon which the Court can grant relief. Thus, dismissal is appropriate under Rule 12(b)(6).

## V. CONCLUSION

In sum, there are various grounds for the dismissal of Byrd's complaint. First, because Byrd's claims do not involve a federal question, the Court does not have jurisdiction to hear the claims under Rule 12(b)(1). Second, Byrd lacks standing because he has not sufficiently alleged an actual and concrete injury that can be redressed by a favorable court decision. Third, Byrd's complaint is moot since as of February 1, 2021, Byrd has been treated the same as residents in long-term care facilities—because the vaccination became available to him—*and* because Byrd was fully vaccinated on March 12, 2020. Thus, there is no longer a present "Case" or "Controversy," and it is impossible for the Court to grant effective relief to Byrd. As such, the Court has no authority to hear the case and must dismiss it.

Additionally, Byrd's first claim, the vaccination prioritization policy claim, failed to state a claim under Rule 12(b)(6) because Byrd has not sufficiently presented a reason

for the Court to intervene with the State's well established authority to legislate matters of public health and safety. In like manner, Byrd's second claim, the Equal Protection claim, fails to state a claim under Rule 12(b)(6) because Byrd has not sufficiently provided how he and residents of long-term care facilities are similarly situated. As a result, Byrd's case must be dismissed because he has failed to bring any claims upon which relief can be granted.

Finally, while it is the Court's standard practice to dismiss without prejudice and leave to amend, the Court may dismiss any matter *with* prejudice when amendment appears futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."); *See also, Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir.1990) (dismissal with prejudice not abuse of discretion if amendment would be futile).

In this case, Byrd has filed numerous motions, briefs, and other documents wherein he has laid out various iterations of his arguments. None, however, articulate a viable cause of action. What's more, the Court cannot conceptualize any amendment that would remedy the legal and procedural deficiencies outlined above. Accordingly, the Court will dismiss Byrd's case with prejudice and without leave to amend or refile.

///

///

# VI. ORDER

**IT IS HEREBY ORDERED THAT**:

1. Defendant's Motions to Dismiss (Dkt. 28) is GRANTED.

2. Bryd's Motion to Dismiss (Dkt. 39) is GRANTED.

3. Defendants' Motion for Extension of Time to File Answer (Dkt. 20) and Defendants' Motion for Limited Discovery (Dkt. 35) are DISMISSED as MOOT.

4. All claims in this case are DISMISSED WITH PREJUDICE and this case is CLOSED.

DATED: May 18, 2021

_____
David C. Nye
Chief U.S. District Court Judge